U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2011 JUL 13 PM 4: 17

CLERK
BY ⎯⎯⎯⎯⎯⎯⎯⎯⎯
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

LISA M. STURTEVANT, )
)
    Plaintiff, )
)
v. ) Case No. 5:10-cv-209
)
MICHAEL J. ASTRUE, COMMISSIONER, )
SOCIAL SECURITY ADMINISTRATION, )
)
    Defendant. )

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO AFFIRM
AND DENYING PLAINTIFF'S MOTION TO REVERSE**
(Docs. 6, 9)

Plaintiff Lisa M. Sturtevant seeks Social Security Disability Insurance benefits ("SSDI") and Supplemental Social Security Income ("SSI"). She brings this action pursuant to 42 U.S.C. § 405(g) to reverse the Social Security Commissioner's decision that she is not disabled, and to remand for a calculation of benefits. Plaintiff filed her motion to reverse the decision of the Commissioner (Doc. 6) on January 21, 2011, and the Commissioner filed a motion to affirm (Doc. 9) on March 25, 2011. Plaintiff is represented by Anthony B. Lamb, Esq. The Commissioner is represented by AUSA Melissa A.D. Ranaldo.

For the reasons set forth below, the Commissioner's motion is GRANTED and Plaintiff's motion is DENIED.

**I.     Background.**

Plaintiff is a forty-two-year-old female who suffers from lower back pain caused by degenerative disc disease and obesity. She graduated from high school in 1987. However, testing conducted in 2003 by the Stern Center for Language and Learning revealed that she has a language-based learning disability that results in difficulty

reading, spelling, and writing. Plaintiff lives with her husband, six-year-old daughter, and teen-aged stepdaughter.

Plaintiff's treatment providers have used conservative treatment methods, such as physical therapy, to alleviate her back pain and maximize her ability to function. Although Plaintiff's providers have consistently recommended that Plaintiff pursue physical therapy, Plaintiff has been noncompliant with physical therapy programs, and has expressed her belief that surgery is the best option. As her primary care physician, Dr. Elizabeth R. Newman, explained in 2002, Plaintiff "seems to think that surgery will magically improve her." (Administrative Record ("AR") 138.) Similarly, in 2003, Occupational Therapist G. Mark Coleman recommended that Plaintiff complete a three-week "Work Hardening Program" that would combine physical reconditioning, pain management counseling, biofeedback, and education. (AR 609.) Plaintiff started this program, but left after four days when she found a job. Plaintiff has also been prescribed pain medication such as Percocet. Presently, Plaintiff is not receiving any treatment for her back, and takes only Tylenol for pain.

Since 2002, a number of physicians and specialists have offered opinions as to Plaintiff's functional limitations. In addition to Dr. Newman and Mr. Coleman, family practice physician, Dr. William Leeson, treated Plaintiff and completed a "Medical Source Statement of Ability to do Work-Related Activities." (AR 405.) Non-treating medical consultants, Drs. Geoffrey R. Knisley and John W. Axline, also offered opinions for purposes of Plaintiff's disability claim. Dr. Knisley completed a "Physical Residual Functional Capacity Assessment" (AR 184) in June 2002. Dr. Axline opined on numerous aspects of Plaintiff's functional capacity in response to "interrogatories to medical expert" in March 2007. (AR 417-27.)

## II. Procedural History.

Plaintiff first applied for disability benefits with the Social Security Administration on September 25, 2002 alleging a disability onset date of June 14, 2002. Her application was initially denied on November 29, 2002, and then denied again upon reconsideration on February 26, 2003. Plaintiff timely requested a hearing before an

Administrative Law Judge ("ALJ"), and ALJ Matthew J. Gormley, III held a hearing on October 26, 2004. ALJ Gormley found Plaintiff not disabled on December 23, 2004. After the Appeals Council denied Plaintiff's request for review, Plaintiff filed suit in this court against the Commissioner. Upon the Commissioner's motion, the court remanded Plaintiff's case to the Social Security Administration for further administrative proceedings.

ALJ Gormley convened a new hearing on September 20, 2006. On April 25, 2007, he issued another decision, finding that Plaintiff is not disabled. Plaintiff appealed the decision to the Appeals Council, which declined to assume jurisdiction because it found no basis to change the ALJ's decision. This court then granted Plaintiff's motion to reopen her suit against the Commissioner, and the Commissioner once again moved to remand her case. Upon the Commissioner's request, the court ordered that Plaintiff's case be remanded to a different ALJ for further administrative proceedings.

On January 14, 2009, ALJ Robert S. Klingebiel held an administrative hearing on Plaintiff's claim. On March 3, 2009, ALJ Klingebiel issued a decision finding that Plaintiff is not disabled. Plaintiff requested review by the Appeals Council, and the Appeals Council instructed ALJ Klingebiel to "offer the claimant the opportunity for a hearing, take any further action needed to complete the administrative record and issue a new decision." (AR 493.) ALJ Klingebiel convened a new hearing on December 8, 2009, and issued another written decision on January 15, 2010, finding that Plaintiff is not disabled. ALJ Klingebiel's January 15, 2010 decision became the final decision of the Commissioner on July 10, 2010, and is the decision now before the court for review. Having exhausted her administrative remedies, the court has jurisdiction over Plaintiff's claim under 42 U.S.C. §§ 405(g) and 1383(c).

### III. Standard of Review.

In reviewing the Commissioner's decision, the court limits its inquiry to a "review [of] the administrative record *de novo* to determine whether there is substantial evidence supporting the Commissioner's decision and whether the Commissioner applied the correct legal standard." *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002); *see also* 42

U.S.C. § 405(g). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Even if a court could draw different conclusions after an independent review of the record, the court must uphold the Commissioner's decision when it is supported by substantial evidence and when the proper legal principles have been applied. *See* 42 U.S.C. § 405(g). The Commissioner resolves evidentiary conflicts and determines credibility issues, and the court may not substitute its own judgment for the Commissioner's. *See Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998); *Aponte v. Secretary of HHS*, 728 F.2d 588, 591 (2d Cir. 1984). However, if the "evidence has not been properly evaluated because of an erroneous view of the law . . . the determination of the [Commissioner] will not be upheld." *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

### IV.   The ALJ's Application of the Five-Step Sequential Evaluation.

In order to receive benefits, a claimant must be "disabled" on or before his or her "date last insured" under the Social Security Act. 42 U.S.C. § 423(a)(1)(A). To determine whether a claimant is "disabled," the regulations require application of a five step sequential evaluation process.[1] *Butts v. Barnhart*, 388 F.3d 377, 380-81 (2d Cir. 2004); 20 C.F.R. §§ 404.1520; 416.920. The answer to the inquiry at each step determines whether the next step's question must be answered. Step one asks whether the claimant has engaged in substantial gainful activity since the alleged onset date of disability. If not, step two asks whether the claimant has any "impairments" that are "severe." If one or more "severe impairments" are found, step three asks whether any of these impairments meet or equal one of the listed impairments found in Appendix I of 20 C.F.R. § 404.1599. If an impairment meets or equals a listed impairment then the claimant is deemed "disabled." If not, step four asks whether the claimant retains the

---

[1] "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

4

Residual Functional Capacity ("RFC") to do his or her past relevant work. Finally, if the claimant is unable to do prior relevant work, step five asks whether the claimant is able to do any job available in significant numbers in the national economy. *Id.* Through the first four steps, the claimant bears the burden of proving disability. At step five, the burden shifts to the Commissioner to show that there is other work in the national economy that the claimant can perform. *See Jock v. Harris*, 651 F.2d 133, 135 (2d Cir. 1981).

In this case, the ALJ followed the sequential evaluation through the first four steps. After concluding that Plaintiff has the severe impairments of degenerative disc disease and obesity, the ALJ found that Plaintiff retained the RFC to perform "light work," with the qualification that Plaintiff "requires the opportunity to change positions periodically and at such times would need to stand for a couple of minutes or sit for a couple of minutes." (AR 720.) "Light work" involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b). Based on this RFC, the ALJ concluded that Plaintiff is capable of performing her past work as a cafeteria counter attendant as it is generally performed in the national economy. In making this determination, the ALJ adopted the testimony of a vocational expert who testified that the job of counter attendant requires "standing or walking up to two-thirds of an eight-hour workday."[2] (AR 725.)

## V.    Conclusions of Law and Analysis.

Plaintiff contends that the ALJ's decision must be reversed because it misapplies the relevant legal standards and is not based on substantial evidence. In particular, she argues that (1) the ALJ committed legal error by not fully adopting the opinion of non-

---

[2] The vocational expert also testified that the job "would require standing and walking six out of the eight hours of the workday," (AR 699), which would constitute three-fourths of a workday, not two-thirds. For purposes of this Opinion, the court assumes that the ALJ determined that Plaintiff retains the ability to stand and/or walk for a total of six hours in one workday.

examining physician Dr. John W. Axline, despite generally affording the opinion "great weight"; and (2) the ALJ's finding that Plaintiff can perform past relevant work is not supported by substantial evidence because the RFC determination did not include all of Dr. Axline's findings. Plaintiff also challenges the ALJ's March 3, 2009 written decision, arguing that it contains an erroneous step five determination that is not supported by substantial evidence.[3]

As explained below, the court affirms the ALJ's step four determination that Plaintiff is capable of performing her past relevant work. Therefore, the court does not reach Plaintiff's challenge to a step five analysis contained in a decision that was subsequently vacated and thus never became the Commissioner's "final decision." *See* 42 U.S.C. § 405(g) (providing that claimants may commence a civil action to obtain judicial review of any "final decision of the Commissioner").

    **A.**    **The ALJ Properly Assessed Dr. Axline's Opinion and the ALJ's RFC Determination is Supported by Substantial Evidence.**

Plaintiff argues that the ALJ's RFC determination should have included the restriction that Plaintiff can only stand and/or walk for a total of four hours in a workday, because Dr. Axline opined, among other things, that Plaintiff can only stand for two hours and walk for two hours in an eight-hour workday. (AR 417-425.) Although Dr. Axline never treated or examined Plaintiff, Plaintiff argues that the ALJ should have adopted these limitations because the ALJ gave Dr. Axline's opinion "great weight." (AR 724.) As argued by Plaintiff, "[b]y [neither] accepting Dr. Axline's opinion as clearly expressed [nor] explaining legally acceptable reasons for rejecting part of that opinion[,] [the ALJ] has in effect substituted his opinion for that of the expert Doctor."

---

[3] In the summary of her argument, Plaintiff claims that "the ALJ failed to properly evaluate the credibility of [Plaintiff]." (Doc. 6 at 3.) However, Plaintiff does not explain this claim further. The Commissioner pointed out this deficiency in his motion to affirm (Doc. 9 at 3 n.1), but Plaintiff elected not to file a reply memorandum to further contest the ALJ's credibility determination. *See* L.R. 9(a)(4). This claim is therefore waived. *See* L.R. 9(a)(6) (requiring argument in support of motion to reverse the Commissioner to "recit[e] pertinent facts," and "discuss[] each issue in a separate subsection"); *Collins v. Marina-Martinez*, 894 F.2d 474, 481 n.9 (1st Cir. 1990) ("It is settled beyond peradventure that issues mentioned in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

(Doc. 6 at 5.) The Commissioner counters that the ALJ was not obligated to adopt every facet of Dr. Axline's opinion, and that substantial evidence supports the ALJ's conclusion that Plaintiff retains the RFC to perform light work.

The opinions of non-treating, non-examining physicians like Dr. Axline must be assessed according to the factors set forth in 20 C.F.R. § 404.1527(d). *See* SSR 06-3p, 2006 WL 2329939, at *4 (Aug. 9, 2006). These factors include: (1) the examining relationship between the claimant and the medical source; (2) the treatment relationship, including its length, nature, and frequency of evaluation; (3) the degree to which the medical source provides evidentiary support for his or her opinion; (4) how consistent the opinion is with the entire record; and (5) whether the opinion is from a specialist. *See* 20 C.F.R. § 404.1527(d)(2)(i)-(ii), (d)(3)-(d)(6).

In this case, there is no dispute that the ALJ afforded "great weight" to Dr. Axline's opinion, and Plaintiff does not challenge that finding. Rather, Plaintiff argues that *because* the ALJ gave it great weight, he was then obligated to specifically adopt all of Dr. Axline's findings, or else provide a valid explanation for not doing so. There is no legal authority to support this proposition, and, in fact, the ALJ is entitled "to piece together the relevant medical facts from the findings and opinions of multiple physicians." *Evangelista v. Sec'y of Health and Human Servs.*, 826 F.2d 136, 144 (1st Cir. 1987); *see also Simpson v. Astrue*, 2011 WL 2458105, at *5 (D. Vt. June 16, 2011) (finding no error in ALJ's decision to reject certain findings of a mental health counselor, while affording "great weight" to others). Indeed, inherent in the ALJ's decision to afford Dr. Axline's opinion "great weight"—as opposed to "controlling weight"—is an acknowledgement that not every detail of the opinion would be adopted. In addition to limitations on walking and standing, Dr. Axline opined on, among other things, Plaintiff's ability to lift, reach, push and pull, balance, and climb stairs and ladders. (AR 724.) While the ALJ found that Dr. Axline's opinion, as a whole, was well supported and entitled to great weight, he properly relied on the entire record, including conflicting opinion evidence, in evaluating Plaintiff's RFC. *See Rivera v. Comm'r of Social Sec.*, 728 F. Supp. 2d 297, 328 (S.D.N.Y. 2010) ("the ALJ was entitled to weigh the

conflicting opinion evidence and credit that which he found most persuasive"); *see also* 20 C.F.R. § 404.1545(a)(1) ("We will assess your residual functional capacity based on all the relevant evidence in your case record.").

The cases cited by Plaintiff are distinguishable because they fault the ALJ for not properly evaluating the opinions of *treating* physicians. *See Doyle v. Apfel*, 105 F. Supp. 2d 115, 121 (E.D.N.Y. 2000) (reversing because the ALJ "rejected the conclusions of the treating physician without basing it on competent medical evidence"); *Pagan v. Chater*, 923 F. Supp. 547, 555-56 (S.D.N.Y. 1996) (noting that the "medical conclusions of a treating physician constitutes evidence that should not be rejected without explanation"). Under the "treating physician rule," a treating physician's opinion on the nature and severity of a claimant's condition is entitled to "controlling weight" in the absence of "good reasons" for discounting it. *See* 20 C.F.R. § 404.1527(d)(2); *Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010). The opinions of nontreating physicians—even those that an ALJ may find persuasive in a number of respects—are afforded no such deference.

Further, assuming *arguendo* that the ALJ's failure to explain why he did not adopt Dr. Axline's standing and walking limitations was legal error, such error would be harmless.[4] A review of the record reveals that the ALJ's assessment of Plaintiff's RFC, including her ability to walk and stand up to six hours in an eight hour workday, is supported by substantial evidence, and the ALJ's rejection of Dr. Axline's findings on this point is thus consistent with 20 C.F.R. § 404.1527(d).

For example, other opinion evidence directly contradicts Dr. Axline's conclusion that Plaintiff cannot stand and/or walk for more than four hours in a workday. In a physical residual functional capacity assessment dated February 19, 2003, state medical consultant Dr. Knisley opined that Plaintiff can stand and walk for a total of about six

---

[4] Even when, unlike here, an ALJ fails to provide an explanation for rejecting the opinion of a treating physician, such error is harmless if the court can assure itself through a review of the record that "the substance of the treating physician rule was not traversed." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). Under this standard, a failure to explain the rejection of opinion evidence is harmless when the court is "confident that the ALJ considered and rejected [the opinion] for reasons that are appropriate under the regulations and evident from the record and the ALJ's findings." *Klodzinski v. Astrue*, 274 Fed. App'x. 72, 74 (2d Cir. 2008).

hours in an eight hour workday. (AR 185-192.) And in a medical source statement completed on December 16, 2005, Dr. Leeson, who actually treated Plaintiff, indicated that Plaintiff's ability to stand and walk was not affected by her impairments. (AR 405.) The ALJ afforded each of these opinions "considerable weight." (AR 722-23.)

Moreover, in addition to the opinion evidence, the ALJ explained that he relied on other record evidence such as Plaintiff's functional capacity testing, her failure to follow prescribed treatment, her lack of ongoing treatment, and her significant daily activities. The ALJ's consideration of this evidence was proper and supports his conclusion that Plaintiff can perform light work.[5] *See Mezzacappa v. Astrue*, 749 F. Supp. 2d 192, 209 n.14 (S.D.N.Y. 2010) ("in order to be entitled to . . . benefits . . . the claimant is required to follow all prescribed treatment if such treatment can restore his or her ability to work") (internal quotation marks omitted); *Armstrong v. Comm'r of Social Sec.*, 2009 WL 2883046, at * 4 (N.D.N.Y. Sept. 4, 2009) (considering plaintiff's own account of her activities of daily living in assessing RFC).

Plaintiff's citation of the opinions of Occupational Therapist Coleman as additional evidence in conflict with the ALJ's RFC determination does not alter this conclusion. On January 13, 2002, Mr. Coleman stated that Plaintiff "is presently functioning at a Sedentary-Light work level," (AR 609), in contradiction with the ALJ's finding that Plaintiff can perform at the light work level. And in a functional capacity evaluation report dated October 7, 2004, Mr. Coleman further observed that, in part

---

[5] Evidence of Plaintiff's failure to follow a prescribed course of physical therapy was documented by various treatment providers. *See, e.g.*, AR 259 (functional capacity report noting that Plaintiff left her three-week "work hardening" program after only four days); AR 138-39 ("[Plaintiff] really would like to be on disability . . . [s]till seems to think that surgery will magically improve her . . . [e]ncouraged her to return to physical therapy, but she declines at this time"); AR 390 ("Unfortunately, her mind seems to be set on surgical management for this problem"); AR 190 ("Claimant has clearly stated to physical therapists, multiple practitioners, that she does not value reh[a]b as a valid way to treat low back pain . . . she []clearly desires to be on disability."); AR 153 (physical therapy treatment note stating that Plaintiff's "prognosis to achieve [her] goals is good if she is compliant with therapy"); AR 155 (physical therapy discontinuation note stating that "Patient has not returned for scheduled appointments."); *see also Simpson*, 2011 WL 2458105, at *8 (explaining that a plaintiff's expressed desire to be on disability is relevant to assessing the plaintiff's credibility as to severity of symptoms).

because of Plaintiff's limited ability to stand and walk, "a sedentary capacity would be a more accurate representation of her demonstrated capacity." (AR 258.) However, the ALJ properly discounted Mr. Coleman's findings as unreliable because Plaintiff did not put forth maximum effort during testing.[6] Mr. Coleman has also offered other opinions consistent with the ALJ's findings including a statement in September 2002 that "Ms. Sturtevant is classified as having a light work classification . . . as determined by her demonstrated performance," (AR 164), and a more recent opinion from October 2006 that Plaintiff can stand and walk for between two and six hours in a workday. (AR 602.)

The substantial evidence standard asks only whether there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. Here, the opinions of Drs. Knisley and Leeson, in addition to the other record evidence cited by the ALJ, provide sufficient support for the ALJ's decision to reject Dr. Axline's standing and walking limitations, and to conclude that Plaintiff retains the RFC to perform light work. In addition, it follows from these findings that the ALJ's step four finding that Plaintiff can perform her past relevant work is supported by substantial evidence. Plaintiff's only argument to the contrary is premised upon the court granting controlling weight to Dr. Axline's opinion.

## VI. **Conclusion.**

For the reasons set forth above, the Commissioner's motion to affirm (Doc. 9) is GRANTED and Plaintiff's motion to reverse (Doc. 6) is DENIED. Because the court affirms the Commissioner's final decision at stage four of the sequential evaluation, it need not consider Plaintiff's arguments that, in a prior written decision that has since been vacated, the ALJ committed legal error at stage five.

---

[6] For example, Plaintiff declined to attempt repetitive trunk bending she had already successfully performed on a frequent basis during repetitive lifting, and she reported poor balance yet demonstrated good balance during balance testing and functional tasks. *See* AR 259.

10

SO ORDERED.

Dated at Rutland, in the District of Vermont, this 13th day of July, 2011.

Christina Reiss, Chief Judge
United States District Court